FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 30 2004 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THOMAS MILTON

             Plaintiff,

- against -

ROSICKI, ROSICKI, & ASSOCIATES, P.C,
NCB SAVINGS BANK, FSB
GREENSTEIN STARR GERSTEIN
& RINALDI, LLP, and
ANDREA L. ROSCHELLE,

             Defendants.
-----------------------------------------------------------x

**OPINION AND ORDER**

02 CV 3052(NG)

**GERSHON, United States District Judge:**

    Plaintiff has filed objections to Magistrate Judge A. Simon Chrein's April 4, 2004 Report and Recommendation. Upon de novo review, pursuant to Rule 72 of the Federal Rules of Civil Procedure, the court now reaches the conclusions set forth below with regard to the defendants' motions to dismiss the plaintiff's claims. The background of this case and the allegations of the amended complaint are accurately summarized in Judge Chrein's Report and Recommendation. Therefore, the court proceeds directly to the law.

    A motion to dismiss should be granted only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). Plaintiff's factual allegations must be accepted as true, *Zinermon v. Burch*, 494 U.S. 113, 118 (1990), and the court must draw all inferences in favor of plaintiff. *Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir.1998)

1

I.  **Plaintiff's Claim that GSG and Roschelle are "debt collectors" under the FDCPA**

Plaintiff alleges that defendants Greenstein Starr Gerstein (GSG) and Andrea L. Roschelle are "debt collectors," as defined by the Fair Debt Collection Practices Act (FDCPA), and that they are therefore liable for violating a number of that statute's provisions. In light of the recent decision of the Court of Appeals for the Second Circuit in *Goldstein v. Hutton*, 374 F.3d 56 (2d Cir. 2004), decided subsequent to Judge Chrein's Report and Recommendation, GSG and Roschelle's motion to dismiss on the grounds that they are not debt collectors is denied.

The FDCPA imposes certain requirements and restrictions only upon "debt collectors," with regard to their "communications" in attempts to recover funds. *See* 15 U.S.C. § 1692. The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). A "communication" is defined as any "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(6).

Plaintiff alleges that GSG and Roschelle are "debt collectors" under the FDCPA as a result of their involvement in the creation and delivery of Notices mailed to him regarding his debt to his condominium association. Specifically, plaintiff alleges that (1) a notice he received regarding his outstanding debt contained the initials of defendant Andrea L. Roschelle in the corner of the document; (2) GSG and Roschelle drafted the notice; (3) the Notice was delivered in an envelope bearing the pre-printed name and return address of defendant GSG; and (4)

2

GSG's name appeared on the certified mail receipt.

GSG and Roschelle argue that these allegations, taken as true, are insufficient to constitute debt collection activity under the FDCPA and that even were the allegations sufficient, they are not debt collectors because they do not engage in debt collection activity "regularly," as required by the FDCPA. *See* 15 U.S.C. § 1692(a)(6).

The FDCPA reaches the activity of lawyers, where they involve themselves regularly in debt collection. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (holding that even arguably indirect involvement of lawyers in debt collection, such as through litigation, may cause them to be "debt collectors" under the FDCPA, if such activity is undertaken regularly). In assessing what constitutes "regular" debt collection under the FDCPA, the percentage of a firm's revenue which is derived from debt collection is not dispositive. *See Goldstein*, 374 F.3d at 62-63 (holding that firm could be a "debt collector" under the FDCPA where debt collection accounted for only .05% of the firm's revenue). The law firm in *Goldstein* "did not advertise itself as being in the business of debt collection or as maintaining a specialty in debt collection." *See id.* at 60. Contrastingly, plaintiff alleges that the members of GSG are "holding themselves out as having expertise in collecting debts, including those owed to cooperative housing corporations," and implicitly asserts that defendants have acted in a manner sufficient to classify their debt collection activities as "regular." In *Goldstein*, the Second Circuit concluded that the determination as to whether or not a firm's debt collection activity is regular can be made on the basis of five nonexclusive factors, none of which is determinative:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications

> and/or litigation activity, including whether any patterns of such
> activity are discernable, (3) whether the entity has systems or
> contractors in place to facilitate such activity, and (5) whether the
> activity is undertaken in connection with ongoing client
> relationships with entities that have retained the lawyer or firm to
> assist in the collection of outstanding consumer debt obligations.

*Goldstein*, 374 F.3d at 62-63 . The Court further indicated that "[w]hether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as part of the practice." *Id.* In that case, the record included evidence that the law firm in question had issued 145 "three-day notices" over a year, and that the law firm had a system in place for handling such notices. *Id.* at 63. Furthermore, the firm's name appeared "on the notice and on the mailing envelope..." *Id.* As a result, the Court held that a "rational factfinder could easily conclude from this evidence, when viewed in the light most favorable to [plaintiff], that [defendant law firm] was a debt collector within the meaning of the FDCPA." *Id.* The Court therefore vacated the district court's summary judgment order and remanded the matter. *Id.*

Here, it cannot be said that plaintiff can prove no set of facts in support of his claim that GSG and Roschelle are debt collectors. The letter was undeniably a debt communication under the FDCPA. *See* 15 U.S.C. § 1692a(2) ("the term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium"). Plaintiff's allegations that defendants created the communication and that defendants engage in this activity regularly are therefore sufficient for the plaintiff to meet his burden. The affidavits to the contrary submitted by defendants are not considered on this motion to dismiss. The court notes that, on a motion for summary judgment, the burden would shift to plaintiff to demonstrate

4

that GSG and Roschelle actually engage in debt collection activity regularly. *See Goldstein*, 374 F.3d at 60. GSG and Roschelle's motion to dismiss is denied.

## II. Plaintiffs claims against the Rosicki Firm

### A. Federal Claims

Defendant Rosicki, Rosicki and Associates, P.C. ("Rosciki") does not claim that the allegations that it is a debt collector are insufficient under the FDCPA, but rather asserts that none of its activity as alleged in the complaint constitutes a violation of the statute. The court examines each of Rosicki's arguments in turn.

#### 1. The November 8, 2001 and November 29, 2001 Notices of Sale

Rosicki argues that it did not violate the FDCPA's requirement of debt verification when it sent plaintiff the November 8 and 29, 2001 Notices of Sale on the ground that they were not "communications" under the FDCPA. According to defendant, the primary purpose of the Notices was to initiate the legal process for the sale of a security and not to collect the debt from plaintiff. But even if debt collection was incidental to its primary purpose, the November 8 and 29, 2001 Notices of Sale were debt communications under the FDCPA. *See Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998). In *Romea*, the debt collector sent a letter to the consumer in order to initiate the eviction process, but the process allowed for eviction to be prevented by payment of the back rent. *See id.* at 116. The debt collector argued that the FDCPA was not implicated, since the debt collection was incidental to the primary purpose of the communication, which was to retake possession of the property. *Id.* The Second Circuit held that "although [the debt collector] is correct that the notice required by § 711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature,

5

this does not mean that the notice is mutually exclusive with debt collection." *Id.* The Court therefore held that the notice was a "communication under 15 U.S.C. § 1692g(a) and, as such, must comply with the FDCPA's requirements." *See id.* (internal quotation marks omitted).

In addition, both Notices of Sale were accompanied by letters that included the following language:

> Once again, we take this opportunity to advise you that if you are desirous of avoiding this sale, you must communicate with us or the lender. Please do not ignore this letter as it will result in a loss of your interest in the cooperative apartment.

Given this language in the accompanying letter, the Notices of Sale would constitute attempts to collect a debt under the FDCPA, even if the court accepted Rosicki's argument that a Notice of Sale in itself should not constitute a debt communication under the statute.

This court agrees with Judge Chrein that plaintiff timely challenged the validity of his debt with a November 4, 2001 letter sent to Rosicki. After the debt was challenged, Rosicki was required to verify plaintiff's debt prior to the initiation of any further debt collection activity. *See* 15 U.S.C. § 1692g(b). Prior to Rosicki's purported verification of the debt, however, it sent the November 8, 2001 Notice of Sale, which did not contain a verification of debt.

The court also finds that, taking plaintiff's allegations as true, Rosicki failed to appropriately verify plaintiff's debt before the November 29, 2001 Notice of Sale and therefore that communication was also a prohibited communication. As discussed above, plaintiff's request for verification triggered Rosicki's statutory obligation to verify the debt. *See* 15 U.S.C. § 1692g(b). Rosicki asserts that it fulfilled its statutory obligation when, on November 14, 2001, it sent plaintiff a copy of the 1994 Note and Security Agreement for the property in dispute.

Plaintiff alleges that the Note did not contain information sufficient to constitute verification of the debt, asserting that the Note did not establish the then current amount of the debt, but rather evidenced only the original amount of the debt. If this allegation is true, Rosicki failed to properly verify plaintiff's debt under the FDCPA. Supplying the plaintiff with a document that provided only the plaintiff's original level of indebtedness would be, at best, confusing. With regard to the verification requirement, the Second Circuit has held that:

> Even if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty. Thus, a debt collector violates the Act if its communication is "reasonably susceptible to an inaccurate reading" of the required message.

*DeSantis v. Computer Credit*, 269 F.3d 159, 161 (2d Cir. 2001).

In sum, the court denies Rosicki's motion to dismiss plaintiff's claim that Rosicki failed to appropriately verify the debt and his claims that the November 8, 2001 and the November 29, 2001 communications were prohibited communications under the FDCPA.

### 2. Rosicki's Threat to "Commence Appropriate Legal Proceedings"

The court agrees with Judge Chrein that there is no merit to plaintiff's claim that Rosicki violated the FDCPA by threatening to "commence appropriate legal proceedings to foreclose its lien..." Under the objective standard utilized in the Second Circuit, it is clear that Rosicki's letter to plaintiff could not have been misconstrued by even the "least sophisticated consumer." *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The court therefore dismisses this claim.

7

### 3. Withholding Rent Pursuant to Warranty of Habitability

The court also agrees with Judge Chrein that there is no legal merit to plaintiff's claim that Rosicki violated the FDCPA by attempting to recover "incidental amounts" of money that NCB paid when plaintiff withheld his rent. Section 1692f(1) prohibits the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The activity as alleged does not appear to be a violation of Section 1692f(1) and plaintiff has cited no authority to support his theory that the activity in question could constitute a violation of the Section. The court therefore dismisses this claim.

### 4. Failing to Fight the Cooperative

Again, the court agrees with Judge Chrein that there is no merit to plaintiff's claim that Rosicki is liable under the FDCPA for failing to join plaintiff in his fight against the cooperative. Plaintiff has cited no authority to support his position, and the claim is dismissed.

### 5. Notices as Subsequent Communications

Plaintiff asserts claims on the basis of Rosicki's failure to include statutorily required language in the November 8, 2001 and November 29, 2001 Notices of Sale. The court reiterates that the Notices of Sale are debt communications under the FDCPA. Though plaintiff misstates the requirements of Section 1692e(11) when he asserts that the Section requires the debt collector to include in any communications subsequent to the initial communication a statement "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose,"[1] the Section does require debt collectors to include in subsequent communications that the communication is from a debt collector, and this language was not present in Rosicki's

---

[1] *See* Plaintiff's Objections at 32.

8

subsequent communications. The court therefore denies Rosicki's motion to dismiss this claim.

### 6. Use of Unfair and Unconscionable Practices or Means to Attempt to Collect a Debt

Finally, plaintiff asserts that Rosicki, in conspiracy with the other three defendants, violated 15 U.S.C. § 1692f, which proscribes the use of unfair and unconscionable means or practices to attempt to collect a debt. *See* 15 U.S.C. § 1692f (2004). Plaintiff does not allege what conduct constituted the conspiratorial violation of this Section, but only conclusorily asserts that the defendants colluded "in furtherance of their individual use of such unfair and unconscionable means and practices." No specific activity on the part of Rosicki is alleged, and plaintiff fails even to allege what the unfair or unconscionable means were. The court dismisses this claim.

### B. State Claims

### 1. Violation of UCC §§ 9-614 and 9-610

Plaintiff alleges that Rosicki's September 27, 2001 Notice of Default failed to comply with UCC § 9-614, which requires that a "notification of disposition" in a "consumer goods transaction" contain specific information detailed in the statute. *See* UCC § 9-614. "Consumer goods" are defined by the UCC as "goods that are used or bought for use primarily for personal, family, or household purposes." UCC § 9-102(23). Plaintiff offers no authority for the proposition that this UCC provision is applicable to a purchase money security interest of the type involved here. Even were it applicable, Section 9-614 applies only to a "notification of disposition," and plaintiff's allegations are insufficient to establish that the Notice of Default

9

constitutes such a notification. Indeed, the requirements of the Section, which references UCC § 9-613(a), would be inappropriate and premature for a Notice of Default. *See* UCC § 9-613(a) (requiring notification of disposition to state, among other things, "method of intended disposition" as well as "time and place of a public disposition"). Furthermore, plaintiff's allegations are insufficient to support his position that he has a claim against Rosicki, as opposed to its client NCB, for this activity. Plaintiff's claim that Rosicki violated UCC § 9-614 is dismissed.

Plaintiff's related claim that Rosicki violated UCC § 9-610(d) in advertising the sale of plaintiff's apartment is also meritless. Section 9-610(d) describes the warranties that are implicit in a contract for "sale, lease, license, or other disposition" of a secured interest. Section 9-610(e) provides for a method by which a secured party can disclaim or modify warranties under Section 9-610(d), but Section 9-610(d) does not provide that the secured party has a responsibility to include certain language describing the warranties. Furthermore, plaintiff's allegations do not support a theory of liability against Rosicki, as opposed to NCB, and plaintiff has cited no authority to the contrary. Rosicki is not the "secured party" in the transaction between plaintiff and NCB. Plaintiff's Section 9-610 claims are dismissed.

### 2. Acting in Concert with NCB in the Breach of Duties as Bailee/Pledgee

Plaintiff asserts that Rosicki violated UCC § 9-207 by "aiding and abetting" NCB's breach of its duties under Section 9-207. Section 9-207(a) provides that "[e]xcept as otherwise provided in subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession." UCC § 9-207(a). The sole basis for

plaintiff's claim against Rosicki is that Rosicki was NCB's lawyer. That is an insufficient basis, in itself, to state a claim. Plaintiff has cited no authority to support this claim. It is dismissed.

### 3. Breach of Contract

Plaintiff alleges that Rosicki is liable for "pursuing legal measures against Plaintiff in breach of the contract upon which it purported to rely and for its failure to proceed against Plaintiff in accordance with the contract." He further alleges that Rosicki had an obligation to him under the Successor-Sponsor-Seller-Affidavit which was part of the original assignment of the lease to plaintiff. These claims are meritless. According to the amended complaint, Rosicki was not a party to the transaction involving the Successor-Sponsor-Seller-Affidavit. Plaintiff has not alleged that there was any agreement between him and Rosicki that Rosicki could have breached. Furthermore, Rosicki was not bound by the covenant of good faith and fair dealing, as alleged by plaintiff, if there was no underlying contract. *See TVT Records v. Island Def Jam Music Group*, 244 F.Supp. 2d 263, 277 (S.D.N.Y. 2003). The court dismisses plaintiff's breach of contract claims against Rosicki.

### 4. Violation of New York General Business Law

Plaintiff alleges that Rosicki violated Sections 349 and 350 of the New York General Business Law, through, respectively, use of deceptive practices and acts, and use of false advertising. Section 349 broadly proscribes "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York. *See* N.Y. GBL § 349(a) (2004). The statute provides for a private right of action for damages or injunctive remedy for any person who has been injured by a violation of the section. N.Y. GBL §

11

349(h). Section 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service is hereby declared unlawful." N.Y. GBL § 350 (2004). Plaintiff's allegations are insufficient to support a claim against Rosicki under either Section 349 or Section 350, and are therefore dismissed.

Section 349 is not applicable to this dispute over acts and practices surrounding a purchase money security instrument. *See Fesseha v. T.D. Waterhouse Investor Services, Inc.*, 193 Misc.2d 253, 260 (Sup. Ct. N.Y. Cty. 2002) (holding "securities instruments, brokerage accounts, and services ancillary to the purchase of securities have been held to be outside the scope of [section 349]"). Even viewing plaintiff's real estate as the focus of the dispute, the Section is inapplicable because plaintiff's apartment is not a "consumer good." *See id.* Furthermore, plaintiff's allegations are insufficient to support a Section 349 claim against Rosicki as opposed to its client NCB. *See Nardella v. Braff*, 621 F. Supp. 1170, 1173 (S.D.N.Y. 1985).

Plaintiff's assertion that Rosicki violated Section 350 by publishing foreclosure Notices of Sale is also meritless. Specifically, plaintiff asserts that the Notices constituted "false advertising" because they omitted details about the apartment such as the number of bedrooms, the square footage, and the desirability of the neighborhood. He further alleges that the Notices violated Section 350 in that they did not state the accurate amount of indebtedness of plaintiff to NCB, and that they did not appropriately describe the warranties associated with the property.

The Notices violated Section 350 only if they were "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Andre Strishak and Associates v.*

*Hewlett Packard Co.*, 300 A.D. 2d 608, 609 (2d Dept. 2002). Plaintiff's allegations are insufficient to establish that the Notices of Sale could have misled a reasonable consumer of a foreclosed property interest, particularly one who was examining only the statutorily-required Notice of Sale. This claim is dismissed.

### 5. Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress is meritless. In order to establish liability against Rosicki, plaintiff must establish that Rosicki is guilty of "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *See Howell v. New York Post*, 81 N.Y.2d 115, 121 (1993). In order to assert this claim, plaintiff must allege conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Ruggiero v. Contemporary Shells, Inc.*, 160 A.D.2d 986, 987 (2d Dept. 1990). Plaintiff has alleged with high specificity what activity Rosicki has undertaken in this dispute. Most of the allegations reflect relatively standard activity on the part of a law firm representing a foreclosing bank. Plaintiff's worst allegations against the defendant are that it failed to comply with the procedural requirements of various statutes. These allegations are insufficient to meet the high standard for a claim of intentional infliction of emotional distress, and this claim is therefore dismissed.

### III. Plaintiff's Claims against NCB

As Judge Chrein accurately concluded, Plaintiff's FDCPA claims against NCB have no

13

legal basis, since NCB is not a "debt collector" under the statute. Plaintiff essentially concedes this fact in his Objections to Magistrate Judge Chrein's Report and Recommendation, but invites the court to "make new law" in order to support his claims. The court declines the invitation. The court therefore adopts Judge Chrein's recommendation and dismisses plaintiff's FDCPA claims against defendant NCB. Plaintiff's state law claims against NCB are also dismissed as the court declines to exercise jurisdiction over them in the absence of any viable federal claim.

## Conclusion

The motion to dismiss of defendants GSG and Roschelle is denied. Defendant Rosicki's motion to dismiss is granted in part and denied in part, as detailed above. Defendant NCB's motion to dismiss all claims against it is granted.

**SO ORDERED**

**Nina Gershon**
**United States District Judge**

Dated: September 30, 2004
Brooklyn, New York