**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   02 CV 3052 (NG)
**THOMAS P. MILTON,**

                     **Plaintiff,**

    -against-   **OPINION AND ORDER**

**ROSICKI, ROSICKI & ASSOCIATES, P.C.,**
**NCB SAVINGS BANK, FSB,**
**GREENSTEIN STARR GERSTEIN & RINALDI, LLP,**
**and ANDREA L. ROSCHELLE,**

                     **Defendants.**
-------------------------------------------------------------------X

**GERSHON, United States District Judge:**

    *Pro se* plaintiff Thomas Milton, trained as an attorney, claims that defendants Greenstein Starr Gerstein & Rinaldi LLP ("Greenstein Starr"), Andrea L. Roschelle ("Attorney Roschelle"), and Rosicki, Rosicki & Associates, P.C. ("Rosicki") violated certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when they created and delivered notices regarding debts that Mr. Milton owed to his condominium association. Defendants Greenstein Starr and Attorney Roschelle move for summary judgment, arguing that they did not engage in debt collection activity, that they are not debt collectors, and that the FDCPA therefore does not apply to their actions. Defendant Rosicki moves to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, Rosicki seeks dismissal of Mr. Milton's claims on the ground that the matter is moot because Rosicki made Mr. Milton an Offer of Judgment under Rule 68 of the Federal Rules of Civil Procedure and the Offer of Judgment exceeds the maximum relief obtainable by Mr. Milton. For the reasons set forth below, Rosicki's motion to dismiss is granted, and summary judgment is granted as to Greenstein Starr and Attorney Roschelle.

## I. BACKGROUND

In 1994, Mr. Milton borrowed $68,000.00 from NCB to purchase shares in a cooperative apartment located at 305 East 72nd Street in New York City. Sometime in early 1999, Mr. Milton's apartment became infested with mice and other vermin. In October 2000, Mr. Milton began withholding his maintenance payments in order to force the cooperative to remedy the situation in his apartment. In May 2001, Mr. Milton received a bill in the amount of $501.40 from the cooperative for arrears that also included legal work performed by Greenstein Starr, the cooperative's general counsel, and Attorney Roschelle, an associate who worked at Greenstein Starr. On May 17, 2001, and November 5, 2001, Mr. Milton received Notices of Default and Intentions to Terminate the Proprietary Lease which were signed by the cooperative's president, but mailed by Greenstein Starr. Mr. Milton was able to determine that Greenstein Starr mailed the Notices because Greenstein Starr's return address appeared on the envelopes and certified mail receipts and because Attorney Roschelle's initials appeared in the path of the documents, located in the lower left hand corner. On October 4, 2001, Milton received a notice from Rosicki, NCB's lawyers, demanding payment and threatening to foreclose in the event of non-payment. Following this initial notice, many communications between the parties ensued. Based on these notices, Mr. Milton brought claims against Rosicki, Greenstein Starr, and Attorney Roschelle alleging that they violated various provisions of the FDCPA. Three claims remain pending against Greenstein Starr and Attorney Roschelle.[1] Three claims also remain pending against Rosicki: (1) violation of 15

---

[1] Mr. Milton alleged a total of fifteen claims, six of which were directed against defendants Greenstein Starr and Attorney Roschelle. Three of these six claims stemmed from alleged breaches of the FDCPA, while the remaining three related to state law claims that were dismissed on December 16, 2004. *See* Order of Dec. 16, 2004, docket no. 57.

U.S.C.§1692 (g) for failing to properly respond to plaintiff's debt validation request, (2) violation of 15 U.S.C.§1692 (g) for mailing two Notices of Sale prior to responding to plaintiff's validation request, and (3) violation of 15 U.S.C.§ 1692 (e)(11) for mailing a letter that did not indicate it came from a debt collector.[2] For these alleged violations, Mr. Milton, in his second amended complaint, seeks additional damages[3], attorney's fees, and actual damages in excess of $10 million. Mr. Milton also seeks an injunction prohibiting Rosicki from future violations of the FDCPA. To settle the alleged violations, Rosicki made Milton a Rule 68 Offer of Judgment of $5000.00 on September 15, 2005.

On January 30, 2006, Magistrate Judge Lois Bloom set a briefing schedule for the defendants' motions and directed Mr. Milton to file his opposition papers, if any, by June 23, 2006. On the same date, Judge Bloom also granted Mr. Milton's request to extend the discovery deadline from December 30, 2005 to March 31, 2006. On March 22, 2006, the discovery deadline was extended until April 21, 2006. Defendants Greenstein Starr and Attorney Roschelle served their summary judgment motion on Mr. Milton on May 12, 2006, and defendant Rosicki served its motion to dismiss on May 17, 2006. By letter dated June 23, 2006, Mr. Milton objected to Judge Bloom's January 30, 2006 order and requested that the court reopen discovery. On June 30, 2006, Mr. Milton's request to reopen discovery and compel certain responses from defendants was denied, but

---

[2]By an opinion dated September 30, 2004, this court dismissed claims that Rosicki (1) violated 15 U.S.C. §1692(e)(5) by writing a false and misleading statement regarding the intention to initiate legal proceedings while never actually having an intention to do so, (2) violated 15 U.S.C. §1692(f)(1) by using unfair and unconscionable means to collect a debt, (3) violated 15 U.S.C. §1692(f)(1) by failing to join plaintiff in his fight against the cooperative, and (4) violated 15 U.S.C.§ 1692(f) by conspiring, and aiding and abetting with the other defendants.

[3]The FDCPA statute refers to statutory damages as "additional damages."

3

Mr. Milton was granted additional time, until July 31, 2006, to respond to defendants' motions. Judge Bloom noted that, "[w]hile the Court sympathizes that plaintiff may have been in ill health, this does not excuse plaintiff's failure to act until two months after the close of discovery, and coincidentally, until the date his opposition to defendants' motions for summary judgment was due." By letter dated July 31, 2006 and received on October 20, 2006, Mr. Milton objected to the defendants' motions on the sole ground that he had been denied fundamental due process because of the defendants' alleged failure to comply with certain discovery requests. Accordingly, the defendants' motions shall be considered unopposed on all grounds except for those grounds that Mr. Milton raised in his letter dated July 31, 2006.

## II. ROSICKI'S MOTION TO DISMISS

### A. Subject Matter Jurisdiction

A federal court lacks subject matter jurisdiction over an action unless the action presents an actual case or controversy. *S. Jackson & Son, Inc. v. Coffee Sugar & Cocoa Exch., Inc.*, 24 F.3d 427, 431 (2d Cir. 1994). When it appears that a court lacks subject matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). Thus, "when parties lack a legally cognizable interest in the outcome [of a case]," a claim becomes moot for lack of subject matter jurisdiction. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A legally cognizable interest requires that a plaintiff have a "personal stake" in the litigation. *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994).

Where a defendant offers judgment in an FDCPA case for the maximum relief obtainable by plaintiff, an action becomes moot and subject to dismissal because there exists no controversy pending court adjudication. *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 451 (E.D.N.Y. 2000). However,

4

if the Offer of Judgment does not cover all potential damages, the offer is not sufficient and controversy remains. *Wilner v. OSI Collection Servs.*, Inc., 201 F.R.D. 321, 323 (S.D.N.Y. 2001). In determining the value of the relief, defendant bears the burden of proving that the Rule 68 offer is more favorable than an award plaintiff could receive by judgment. *Reiter v. MTA N. Y. City Transit Auth.*, 457 F.3d 224, 231 (2d Cir. 2005).

### B. Damages

The FDCPA provides that any debt collector who fails to comply with any provision of the statute is liable to such person for damages, consisting of (1) any actual damage sustained by such person as a result of such failure, (2) additional damages as the court may allow, but not exceeding $1000.00, and (3) the cost of the action together with a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1692(k). The FDCPA does not contain an express provision for declaratory or injunctive relief, *Sparkman v. Zwicker & Assoc., P.C.,* 374 F.Supp.2d 293, 299 (E.D.N.Y. 2005) and therefore courts have found injunctive relief unavailable to individuals under this statute. *Weiss v. Regal Collections,* 385 F.3d 337, 350 (3d Cir. 2004); *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 977 (5th Cir. 2000; *Sibley v. Fulton DeKalb Collection Servs.*, 677 F.2d 830, 834(11th Cir. 1982). Accordingly, Mr. Milton is not entitled to injunctive relief, and, to determine whether Rosicki's Rule 68 Offer of Judgment provides Mr. Milton complete relief under 15 U.S.C. § 1692(k), the court must analyze only additional damages, attorney's fees, and actual damages to decide if Mr. Milton could possibly obtain more than $5000.00.

#### 1. Additional Damages

Additional damages are limited to $1000.00 per action. *Teng v. Metro. Retail Recovery Inc.*, 851 F.Supp. 61, 69 (E.D.N.Y. 1994). While the decision as to whether to award additional damages

5

and the size of such award is "committed to the sound discretion of the district court," *Teng v. Metro. Retail Recovery Inc.*, 851 F.Supp. 61, 69 (E.D.N.Y. 1994) *citing Clomon v. Jackson,* 988 F.2d 1314, 1322 (2d Cir. 1993), a maximum of $1000.00 can be awarded "for each case, not for each FDCPA violation or improper communication." *Harper v. Better Bus. Servs.*, 961 F.2d 1561, 1563 (11th Cir. 1992). Assuming that Rosicki did violate the FDCPA, the court could award Mr. Milton a maximum of $1000.00 in additional damages.

### 2. Attorney's Fees

A prevailing plaintiff in an FDCPA case is ordinarily entitled to recover reasonable attorney's fees under 42 U.S.C. § 1988. *E.g.*, *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694 (2d Cir. 1998). However, a *pro se* plaintiff cannot recover attorney's fees for representing himself. *Id.* "This principal applies equally to attorneys at law firms that represent themselves or the firm in a *pro se* capacity." *Newman and Cahn, LLP v. Sharp*, 388 F.Supp.2d 115, 119(E.D.N.Y. 2005). Thus, because Mr. Milton is proceeding *pro se*, he cannot recover any attorney's fees as damages.

### 3. Actual Damages

As discussed above, Mr. Milton cannot recover any attorney's fees and can recover a maximum of $1000.00 in additional damages. Therefore, in order for Rosicki to prove that Mr. Milton could not collect a sum greater than Rosicki's $5000.00 offer, Rosicki must demonstrate that Milton has no potential to collect actual damages of more than $4000.00. Actual damages compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D.Del. 1991).

#### a. A Reasonable Nexus

Mr. Milton could not possibly recover more than $4000.00 because there is no reasonable

nexus between the nature of Rosicki's conduct and the emotional and physical distress which Mr. Milton claims to have suffered. *See Donahue v. NFS*, Inc., 781 F. Supp. 188, 193 (W.D.N.Y. 1991). No reasonable nexus exists between Rosicki's alleged FDCPA violations and Mr. Milton's alleged distress because: (1) several months prior to Rosicki's alleged FDCPA violations, Mr. Milton wrote letters to various people complaining of similar distress, and (2) in those earlier letters, Mr. Milton attributed the distress to living in a vermin-infested apartment.

Mr. Milton claims that, as a result of Rosicki's FDCPA violations, he suffered "insomnia, sleeplessness, nightmares, fatigue, physical and mental exhaustion, restlessness, difficulty in concentrating and making decisions, agitation, irritability, digestive system disorders including vomiting, diarrhea and constipation, extreme weight loss, frequent and serious body aches, extreme panic and anxiety accompanying tachycardia and depressed mood." Rosicki Ex. "G" response #4, May 16, 2005. However, in his July 18, 2001 letter to Ms. Karen Davis of NCB, Mr. Milton claimed similar ailments which he attributed to living in his vermin-infested, "hazardous," "horrific" apartment. Ex. "L." attached to Am. Compl. In the July 2001 letter, Milton complained of "interrupted sleep," "severe consequences on [his] health and well being which has greatly deteriorated during this time," "injury to [...] [his] physical and mental health, safety and well-being," and "[endurance of] unbelievable stress, trauma and anxiety." *Id.* He notes the "devastating effects that these conditions have had on [his] mental and physical health and well-being and the extent to which [he] ha[s] been caused to suffer serious pain and suffering as a result . . . " *Id.* Notably, Milton wrote this July 2001 letter several months before he received his first communication from Rosicki in October 2001.

Additionally, in a letter to Mr. Daniel M. Sullivan, the President and Chairman of the Board of Mr. Milton's cooperative, Mr. Milton attributed his ailments to the conditions in his apartment:

7

"these conditions [in my apartment] have prevented me from sleeping, eating, and working, and I have become increasingly ill as a result. Every day is now a struggle for survival. As none of you are blind, you would have to close your eyes to avoid seeing what is happening to me as a result of what you have done to me." Ex."W" attached to Am. Compl. (referring to his health due to the "deplorably atrocious and inhumane" condition of his apartment).

Because Mr. Milton complained of similar ailments before he ever received any communications from Rosicki and attributed these ailments to the stress he endured from living in a vermin-infested apartment, Mr. Milton will be unable to prove any causal connection between his ailments and Rosicki's actions. *See generally Lincoln First Bank of Rochester v. Baker*, 18 B.R. 243 (W.D.N.Y. 1982) (holding that, although debt collector harassed and embarrassed debtor during debt collection efforts in violation of the FDCPA, because debtor simultaneously had matrimonial problems with his wife and a surrogate matter in the Appellate Division, debtor failed to prove a causal connection between his illness and debt collector's actions).

### b. $4000 Limit

Even if Mr. Milton could prove a reasonable nexus between Rosicki's conduct and Mr. Milton's distress, Mr. Milton could not possibly recover more than $4000.00 in actual damages. As will be seen, where there is a nexus, courts generally award actual damages ranging from $100.00 to $5000.00 to debtors whose creditors violated the FDCPA. Any damage award that Mr. Milton could conceivably receive would fall on the low end of this range.

In circumstances far more egregious than those present here, courts have awarded only several hundred dollars in damages. In *Donahue v. NFS*, *Inc.*, for example, a debt collector "frequently and persistently" mailed debtor notices with threatening language. *Donahue v. NFS*, Inc., 781 F. Supp. 188, 191 (W.D.N.Y. 1991). The *Donahue* plaintiff claimed that these notices caused

her "many physical and emotional problems" and that she suffered "breathlessness, hyperventilation, nervousness, worrying, irritability, loss of concentration, weight gain, headaches, nausea, fear, and depression" *Id*. at 193. The *Donahue* plaintiff's doctor even prescribed her Prozac as a result of her depression. *Id*. She became afraid that she would lose wages or property because of the claimed debt. *Id*. Nonetheless, the *Donahue* court awarded actual damages of only $100.00. *Id*. Similarly, in *Horkey v. JVDB & Assoc., Inc*., a debt collector called the debtor at her place of employment after the debtor had asked him not to do so. *Horkey v. JVDB & Assoc., Inc*., 333 F.3d 769, 772 (7th Cir. 2003). The debt collector spoke to the debtor's co-worker on the phone and told the co-worker to tell debtor to, "quit being such a [expletive] bitch." *Id*. The court awarded debtor only $350.00. *Id.* The debt collector in *Teng v. Metropolitan Retail Recovery Inc*., 851 F.Supp. 61, 67 (E.D.N.Y. 1994), not only repeatedly called debtor's place of business, but also lied to debtor's employee, telling him that there had been an "emergency family crisis overseas," in order to get plaintiff's personal information. The debtor thought the call regarded his father-in-law who had been sick in a hospital in Beijing at the time. *Id.* at 63. The debt collector's lie caused the debtor and his wife much strife and emotional distress. *Id*. Moreover, multiple debt collectors from defendant's debt collection agency threatened the *Teng* plaintiff that they were going to "pop a lock" and remove his furniture. *Id.* For his emotional distress, the court awarded the *Teng* plaintiff $1000.00. *Id.* at 71.

The severity and disruptiveness of Rosicki's alleged statutory violations pale in comparison to actions of debt collectors in the cases discussed above. There are no allegations that Rosicki made threats or disturbed Milton at his place of business. Moreover, Rosicki did not harass Milton nor use abusive language. Rather, Rosicki's alleged FDCPA violations consisted only of the following: failing to respond to Milton's debt validation request, mailing two Notices of Sale prior to responding to Milton's validation request, and mailing a letter that did not indicate it came from a

9

debt collector.

Although there are some cases where courts have awarded over $4000.00, these cases are readily distinguishable from the case at hand. For example, in *Chiverton v. Federal Financial Group*, the court awarded plaintiff $5000.00 for his emotional distress where a debt collector repeatedly called debtor at work after he asked him not to do so, causing debtor to fear loss of employment and loss of an upcoming promotion. *Chiverton v. Fed. Fin. Group,* 399 F.Supp.2d 96, 100-102 (D. Conn. 2005). On a particular day, the *Chiverton* debt collector called the debtor at his office five times within a short time span. *Id*. at 99. The debt collector spoke to the debtor's supervisor. *Id.* at 100-102. Moreover, the debtor had to disclose the situation to his boss, which was "uncomfortable and embarrassing." *Id*. at 102. The debt collector used abusive language and caused debtor anxiety, stress, frustration, and shame. *Id.* Here, Rosicki did not invade Milton's privacy by contacting him at work or speaking to any supervisors. Furthermore, Rosicki never used abusive language nor harassed Milton via phone calls or letters. Accordingly, Mr. Milton's claims would not merit an award of such magnitude.

### III. GREENSTEIN STARR AND ATTORNEY ROSCHELLE'S MOTION FOR SUMMARY JUDGMENT

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Even though the motion for summary judgment is unopposed, the court will determine whether the defendants have met their burden of showing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *See CSC Holdings Inc. v. Kelly*, 374 F.Supp. 303, 305 (E.D.N.Y. 2005).

The FDCPA imposes certain requirements and restrictions upon "debt collectors" with regard to their attempts to recover funds. *See* 15 U.S.C. § 1692. For purposes of the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA applies to the activity of lawyers when they "regularly" engage in debt collection. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). In determining whether a lawyer or firm engages in debt collection "regularly," the Second Circuit has outlined five nonexclusive factors, none of which is determinative:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004). Furthermore, "whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part

11

of the practice." *Id.* In *Goldstein*, the Second Circuit found that a defendant law firm was a "debt collector" under the FDCPA where the defendant law firm had a system in place for preparing and issuing notices, used law firm letterhead when issuing the collection notices, and issued 145 collection notices within a 12-month period, many of which were issued on behalf of one particular entity for whom the law firm repeatedly sent collection notices.

On the defendants' prior motion to dismiss, the court held that the allegations of the complaint were sufficient to meet the statutory requirement as described in *Goldstein*. 374 F.3d at 56. The court stated: "Plaintiff's allegations that defendants created the [debt] communication and that defendants engage in this activity regularly are therefore sufficient for the plaintiff to meet his burden," and "[t]he affidavits to the contrary submitted by defendants are not considered on this motion to dismiss." However, the court noted that, "on a motion for summary judgment, the burden would shift to plaintiff to demonstrate that [Greenstein Starr] and Roschelle actually engage in debt collection activity regularly." Defendants now seek summary judgment on this very point.

Other than the bare allegations in his complaint Mr. Milton has not produced any specific facts to support an inference that defendants Greenstein Starr and Attorney Roschelle either (1) engaged in a business the primary purpose of which was the collection of debt or (2) "regularly" engaged in debt collection activity. For example, Mr. Milton has provided no evidence about the number of debt collection communications that the moving defendants issued, the frequency of such communications, or whether the moving defendants have a system to facilitate debt collection activity.

The defendants, however, have produced evidence in the form of an affidavit from Attorney Roschelle which states that Greenstein Starr "was a law firm with a general commercial law practice, having its principal office in New York, New York. At no time was [Greenstein Starr] or

I in the business of debt collection, nor did I or [Greenstein Starr] regularly collect or attempt to collect, directly or indirectly, debts owed or claimed to be owed to our clients." Roschelle Aff. ¶ 10. In their brief, the moving defendants also state that Greenstein Starr, in the three years from 1999 to 2001, "only issued 125 creditor rights' letters, and derived less than 1% of its annual income from the assistance of its clients in enforcing their creditors' rights."[4] The volume of debt collection activity admitted by the moving defendants in their brief, standing alone, would be insufficient to establish that there is a genuine issue of triable fact about whether the moving defendants were debt collectors for purposes of the FDCPA. The number of debt collection notices that Greenstein Starr admits to sending–125 over three years–is less than one third of the number of debt collection notices–145 in one year–that the law firm sent in the *Goldstein* case. Moreover, unlike the law firm in *Goldstein*, there is no evidence that Greenstein Starr had a system in place for preparing and issuing notices, and there is no pattern or indication that Greenstein Starr repeatedly sent collection notices on behalf of any one particular client or entity. Finally, Mr. Milton has produced no evidence that Greenstein Starr or Attorney Roschelle sought "debt collection business by marketing [themselves] as having debt collection expertise." *Goldstein*, 374 F.3d at 63.

## IV. MR. MILTON'S OPPOSITION TO THE DEFENDANTS' MOTIONS

Mr. Milton's argument that he has been denied his fundamental due process rights because he has not had a full and fair opportunity to discover facts relevant to his case is unpersuasive. The deadline for discovery in this case was extended twice at Mr. Milton's request, and Mr. Milton did not object to the court's January 30, 2006 order which set the briefing schedule for the defendants'

---

[4]The moving defendants attempt to support this statement with a citation to the record evidence that does not mention either of these statistics. However, given that the moving defendants have produced evidence in the form of an affidavit that indicates they were not "debt collectors" under the FDCPA, it is Mr. Milton's burden to produce specific facts sufficient to establish a genuine factual issue about whether the moving defendants were debt collectors.

13

motions until the date that his opposition papers were due on June 30, 2006. Mr. Milton also failed to move to compel or seek the assistance of the court in obtaining discovery responses until June 30, 2006, more than two months after discovery closed. Furthermore, to delay a court's consideration of a summary judgment motion based on incomplete discovery, a non-movant must file an affidavit explaining: (1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985). "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-1139 (2d Cir. 1994). Mr. Milton has failed to file an affidavit under Rule 56(f) and has failed to outline (1) the specific nature of the uncompleted discovery, (2) how the discovery sought is reasonably expected to create a genuine issue of material fact, and (3) what specific efforts he has made to obtain discovery.

## V.    CONCLUSION

Because defendants Greenstein Starr and Attorney Roschelle have produced evidence indicating that they are not "debt collectors," and Mr. Milton has failed to produce specific facts sufficient to raise a triable issue of fact about whether the moving defendants qualify as "debt collectors" under the FDCPA, summary judgment is granted as to Greenstein Starr and Attorney Roschelle. The Clerk of Court is directed to enter judgment for defendants Greenstein Starr and Attorney Roschelle.

For the reasons outlined above, Rosicki's motion to dismiss for lack of subject matter jurisdiction is granted because Rosicki's Rule 68 Offer of Judgment renders Mr. Milton's action against Rosicki moot. The Clerk of Court is directed to enter judgment against defendant Rosicki in accordance with its $5,000.00 Rule 68 offer of judgment. *See Ambalu*, 194 F.R.D at 453.

**SO ORDERED.**

/s/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
August 3, 2007